Allison Schmidt, Esq.
California Bar No. 284725
NEVADA'S LAWYERS
7250 S. Durango Dr. #130-A295
Las Vegas, NV 89113
702.900.9040
Email: allison@nevadaslawyers.com
*Attorneys for Ron Ruangtragool*
*and Aaron Guhin*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON GUHIN, an individual and RON RUANGTRAGOOL, an individual,<br>Plaintiffs,<br><br>vs.<br><br>NORTHLAND THEA PORTFOLIO LLC, NORTHLAND THEA LLC, NORTHLAND THEA IV LLC, NORTHLAND THEA PORTFOLIO II, LLC; NORTHLAND THEA PORTFOLIO III, LLC, and MATTHEW GOTTESDIENER,<br>Defendants. | Case No.<br>Department:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs RON RUANGTRAGOOL and AARON GUHIN file their complaint and allege against Defendant NORTHLAND THEA PORTFOLIO LLC, NORTHLAND INVESTMENT CORPORATION, and MATTHEW GOTTESDIENER as follows:

## I. INTRODUCTION

1. This is a civil action arising from Defendants, ownership, operation, and management of a residential property located at 1000 W. 8th Street, Los Angeles, California ("Property"), where Plaintiffs resided.

2. Defendants knowingly maintained the property in a dangerous, substandard, and uninhabitable condition, failed to timely repair code violations, and continued to collect rent in violation of California law.
3. Defendants harassed Plaintiffs in retaliation for reporting violations of California law to government authorities.
4. Defendants destroyed Plaintiffs' personal property or allowed Plaintiffs' personal property to be destroyed.
5. This action seeks damages, statutory penalties, and restitution.

## II. JURISDICTION AND VENUE

### A. Diversity Jurisdiction (28 U.S.C. § 1332)

4. This Court has jurisdiction under 28 U.S.C. § 1332(a) (diversity jurisdiction).
5. Plaintiff Ron Ruangtragool, an individual, is a citizen of California.
6. Plaintiff Aaron Guhin, an individual, is a citizen of California.
7. Upon information and belief, Defendants are citizens of states other than California.
8. Upon information and belief, Defendant NORTHLAND THEA PORTFOLIO LLC is a Delaware limited liability company with its principal place of business in Massachusetts.
9. Upon information and belief, Defendant NORTHLAND THEA LLC, is a Delaware limited liability company with its principal place of business in Massachusetts.
10. Upon information and belief, Defendant NORTHLAND THEA IV LLC, is a Delaware limited liability company with its principal place of business in Massachusetts.
11. Upon information and belief, Defendant NORTHLAND THEA PORTFOLIO II, LLC is a Delaware limited liability company with its principal place of business in Massachusetts.
12. Upon information and belief, Defendant NORTHLAND THEA PORTFOLIO III, LLC is a Delaware limited liability company with its principal place of business in Massachusetts.

13. Upon information and belief, Defendant MATTHEW GOTTESDIENER is an individual with citizenship in Massachusetts and CEO of NORTHLAND THEA PORTFOLIO LLC.

14. Upon information and belief, each Defendant LLC's members are citizens of states other than California.

15. The citizenship of each Northland Defendant is determined by the citizenship of each of its members, including all upstream members.

16. The identities and citizenship of the members of the Northland Defendants are not publicly available and are within Defendants' exclusive knowledge and control.

17. Plaintiff will seek leave to amend these allegations upon confirmation of Defendants' membership structure through discovery.

18. The amount in controversy exceeds $75,000, exclusive of interest and costs, including statutory penalties, emotional distress damages, rent restitution and other damages, punitive damages and attorney's fees.

**B. Venue**

12. Venue is proper in this District because the Property is located in Los Angeles County.

## III. PARTIES

13. Plaintiffs were residential tenants at the Property.

14. Defendants owned, leased, managed, maintained, and controlled the Property.

15. Defendants operated as a single enterprise, sharing common ownership and capitalization, centralized management, integrated maintenance operations, unified leasing and rent collection

16. Each Defendant acted as the agent, alter ego, and joint-venturer of the others.

## IV. FACTUAL ALLEGATIONS

**A. The Property**

17. The Property is a large multi-unit residential building marketed as a luxury high-rise.

18. Defendants owed duties under Civil Code §1941.1, Health & Safety Code §17920.3 and the Los Angeles Municipal Code.

**B. Timeline of LADBS Enforcement and Violations**

**1. Initial Structural Hazard (May 2023)**

19. On or about May 3, 2023, LADBS opened a case identifying a "Building or wall that could fall down" hazard.

20. This condition represents a structural safety risk meeting the definition of a substandard building under HSC §17920.3.

**2. June 2023 – Notice of Code Violation**

21. On June 30, 2023, LADBS issued a formal Notice of Code Violation for Unit 1625 and the Property.

22. Violations included failure to obtain required building permits, missing or disabled carbon monoxide alarms, missing or disabled smoke alarms

23. The notice required correction by July 30, 2023.

24. These violations involved life-safety systems, not cosmetic issues.

**3. July–August 2023 – Order to Comply**

25. On August 4, 2023, LADBS issued an Order to Comply directed to the property owner.

26. Violations included failure to repair walls and ceilings damaged by water intrusion, failure to maintain the building in a safe condition, and continued absence of smoke and CO alarms.

27. The order required compliance by August 18, 2023.

**4. Confirmed Conditions Across LADBS Records**

29. LADBS records consistently document the same conditions including missing smoke alarms, missing carbon monoxide alarms, ongoing structural and water damage, and unpermitted drywall and repair work

30. These violations persisted through at least October 10, 2023, the recorded compliance date.

**5. Permit Activity Confirms Reactive (Not Preventative) Repairs**

31. Permit records show repairs were initiated only after enforcement action.

32. The permit described "Water damage, termite damage / dry rot repair" affecting multiple units and repairs tied to the compliance orders.

33. This demonstrates the existence of widespread building damage, that Defendants knew of the conditions and that repairs were delayed and reactive.

**C. Failure to Timely Repair**

34. Defendants received formal notice of violations.

35. Defendants failed to correct violations within statutory deadlines.

36. Defendants continued to collect rent, lease units, and represent the property as habitable.

37. The delays exposed Plaintiff to unsafe air quality, risk of fire or carbon monoxide poisoning, structural instability, and water intrusion.

**D. Substandard Housing Conditions**

38. The conditions described constitute substandard housing under HSC §17920.3 Civil and Code §1941.1.

39. The absence of smoke and CO alarms alone renders a unit untenantable.

40. Any water damage and structural deterioration further establish uninhabitability.

**E. Enterprise Conduct**

41. Defendants structured ownership across multiple LLCs to hold title, manage operations and limit liability

42. In practice, Defendants functioned as a single landlord enterprise.

43. Maintenance failures were systemic and centrally controlled.

**V. CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Breach of Implied Warranty of Habitability**

44. Plaintiffs reallege and incorporate all prior allegations.

45. At all relevant times, Defendants, as landlords, owed Plaintiff a non-delegable duty to provide and maintain a residential dwelling in a habitable condition pursuant to California law.

46. The implied warranty of habitability required Defendants to ensure that the premises substantially complied with applicable building, housing, and health codes materially affecting tenant health and safety.

47. Defendants breached the implied warranty of habitability by allowing the premises to exist in substandard and unsafe conditions, including but not limited to:

(a) water intrusion and leak-related damage;

(b) damaged walls and ceilings requiring repair;

(c) missing or disabled smoke and carbon monoxide alarms; and

(d) other unsafe and unsanitary conditions.

48. LADBS records confirm that the premises were in violation of applicable codes and required corrective action, including repair of leak-damaged structural components and installation of required safety devices.

49. These conditions materially affected Plaintiff's health, safety, and use of the premises.

50. Defendants had actual and constructive notice of these conditions and failed to timely and adequately remedy them.

51. As a result, the premises were untenantable, and Plaintiff was deprived of the use, comfort, and safety of the dwelling.

52. Plaintiff suffered damages including rent abatement, relocation expenses, property damage, emotional distress, and other consequential damages.

**SECOND CAUSE OF ACTION**

**Violation of Civil Code §1942.4**

53. Plaintiffs reallege and incorporate all prior allegations.

54. At all relevant times, Defendants owned, operated, managed, and/or controlled the subject premises.

55. Pursuant to California Civil Code §1942.4, a landlord may not demand, collect, or receive rent for a dwelling unit that is substandard and untenantable where:

(1) the dwelling substantially lacks required habitability standards;

(2) a public officer has issued a notice of violation regarding those conditions;

(3) the landlord has had a reasonable opportunity to repair; and

(4) the landlord has failed to comply.

56. The subject premises contained numerous conditions that rendered it untenantable, including but not limited to:

(a) water intrusion and leak-related damage;

(b) damaged walls and ceilings;

(c) missing or disabled smoke alarms;

(d) missing or disabled carbon monoxide alarms; and

(e) other conditions materially affecting health and safety.

57. The Los Angeles Department of Building and Safety issued formal notices of violation concerning these conditions. For example, a Notice of Code Violation identified required repairs and safety deficiencies within the unit, including missing smoke and carbon monoxide alarms and unpermitted repair work.

58. Defendants were therefore on actual notice of the substandard conditions.

59. Despite receiving notice, Defendants failed to timely and adequately repair the violations within a reasonable period. Subsequent enforcement actions, including orders to comply requiring repair of leak-damaged walls and ceilings, confirm ongoing noncompliance.

60. Defendants had a reasonable opportunity to repair but failed to bring the property into compliance in a timely manner.

61. During the period of noncompliance, Defendants demanded, accepted, and/or retained rent from Plaintiff.

62. By demanding and collecting rent while the premises remained in violation of habitability standards and subject to official notices of violation, Defendants violated Civil Code §1942.4.

63. As a direct and proximate result, Plaintiff suffered damages including statutory damages, actual damages, and other relief permitted by law.

64. Defendants' conduct was knowing and willful, entitling Plaintiff to statutory penalties, attorneys' fees where authorized, and all other available relief.

**THIRD CAUSE OF ACTION**

**Breach of Covenant of Quiet Enjoyment**

65. Plaintiffs reallege and incorporate all prior allegations.

66. At all relevant times, the lease included an express and/or implied covenant of quiet enjoyment, guaranteeing Plaintiff's right to use and enjoy the premises without substantial interference by Defendants.

67. Defendants breached this covenant by substantially interfering with Plaintiffs' use and enjoyment of the premises, including but not limited to:

(a) failing to maintain the premises in a habitable condition;

(b) permitting hazardous and substandard conditions to exist;

(c) conducting repeated and intrusive entries into the premises; and

(d) performing or permitting disruptive and unsafe repair activities.

68. The conditions at the premises—including damaged walls and ceilings, and missing required safety devices—were the subject of official code enforcement actions requiring repair and compliance.

69. Defendants' conduct materially deprived Plaintiff of the beneficial use of the premises and substantially interfered with Plaintiff's possessory rights.

70. As a direct and proximate result, Plaintiff suffered damages including loss of use and enjoyment, discomfort, annoyance, and economic losses.

71. Defendants' conduct was substantial, ongoing, and unreasonable, and constitutes a breach of the covenant of quiet enjoyment.

72. Plaintiffs reallege and incorporate all prior allegations.

73. Defendants substantially interfered with Plaintiff's use of the premises.

**FOURTH CAUSE OF ACTION**

**Negligence / Negligence Per Se**

74. Plaintiff realleges and incorporates all prior allegations.

75. Defendants owed Plaintiff a duty to exercise reasonable care in the ownership, management, maintenance, and repair of the premises.

76. Defendants breached that duty by, among other things:

(a) failing to maintain the premises in a safe and habitable condition;

(b) failing to timely repair known hazardous conditions;

(c) performing or permitting unsafe and defective repair work; and

(d) failing to comply with applicable statutes, ordinances, and regulations.

77. Defendants violated multiple provisions of applicable housing and safety laws, including requirements relating to structural integrity, maintenance, and installation of smoke and carbon monoxide alarms, as confirmed by official enforcement actions.

78. These statutes and regulations were designed to protect tenants such as Plaintiff from the type of harm suffered.

79. Defendants' violations constitute negligence per se under California law, creating a presumption of negligence.

80. As a direct and proximate result, Plaintiff suffered damages including property damage, economic loss, loss of use, and other consequential damages.

**FIFTH CAUSE OF ACTION**

**Unfair Competition (Bus. & Prof. Code §17200)**

81. Plaintiffs reallege and incorporate all prior allegations.

82. Defendants engaged in unlawful business practices by renting unsafe units, ignoring code violations and collecting unlawful rent.

83. Plaintiff seeks restitution.

**SIXTH CAUSE OF ACTION**

**Fraudulent Concealment**

84. Plaintiff realleges and incorporates all preceding paragraphs.

85. Defendants had a duty to disclose material facts relating to the condition of the premises, including known defects, hazards, and code violations that materially affected habitability and safety.

86. Defendants knowingly concealed and/or failed to disclose material facts, including but not limited to:

(a) the true nature and extent of water intrusion and structural damage;

(b) the existence of code violations and unsafe conditions; and

(c) the failure to obtain required permits or perform repairs in compliance with applicable standards.

58. City inspection findings contradict Defendants' representations regarding the existence and extent of water damage and the necessity of invasive repairs.

59. Defendants intended to induce Plaintiff to remain in the tenancy, continue paying rent, and refrain from taking action to protect Plaintiff's rights.

Plaintiff was unaware of the concealed facts and reasonably relied on Defendants' representations and omissions.

60. Had Plaintiff known the true facts, Plaintiff would not have continued the tenancy or would have acted differently.

61. As a direct and proximate result, Plaintiff suffered damages including economic loss, property damage, and other consequential damages.

62. Defendants' conduct was intentional, fraudulent, and carried out with malice, oppression, and fraud, entitling Plaintiff to punitive damages.

**SEVENTH CAUSE OF ACTION**

**Tenant Harassment (LAMC §45.33)**

61. Plaintiffs reallege and incorporate all prior allegations.

61. Defendants' failure to repair and interference with tenancy rights constitutes harassment.

62. Pursuant to LAMC §45.34, "tenant prevailing in court under this article may be awarded compensatory damages, rent refunds for reduction in housing services, reasonable attorney's fees and costs, imposition of civil penalties up to $10,000 per violation depending upon the severity of the violation, tenant relocation, and other appropriate relief, as adjudged by the court."

**EIGHTH CAUSE OF ACTION**

**Conversion**

62. Plaintiffs reallege and incorporate all prior allegations.

61. At all relevant times, Plaintiff owned, possessed, and had the immediate right to possession of personal property located within the subject premises, including but not limited to furniture, clothing, electronics, household goods, and other personal effects.

62. Defendants, and each of them, without Plaintiff's consent and without lawful justification, intentionally and substantially interfered with Plaintiff's possession of said

personal property by forcing Plaintiffs out of the Property and allowing unfettered access to Plaintiffs' home and personal property by unknown third parties.

63. As reflected in the City's enforcement records, Defendants were on notice of hazardous and defective conditions, including water damage and structural issues requiring repair. The repair work itself—performed under Defendants' control—created foreseeable risk of damage to tenant property.

64. Defendants' conduct constituted a wrongful exercise of dominion over Plaintiff's personal property, inconsistent with Plaintiff's rights, and resulted in the loss, destruction, and/or substantial interference with Plaintiff's use and possession of that property.

65. As a direct and proximate result, Plaintiff suffered damages including the fair market value of the property, loss of use, and consequential damages.

66. Defendants' conduct was willful, oppressive, and carried out with conscious disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

**NINTH CAUSE OF ACTION**

**Trespass to Chattels**

63. Plaintiffs reallege and incorporate all prior allegations.

67. Plaintiffs owned and possessed personal property within the subject premises.

68. Defendants intentionally and without authorization interfered with Plaintiffs' personal property by physically contacting, moving, damaging, contaminating, or exposing such property to harmful conditions.

69. The LADBS violations confirm that Defendants allowed unsafe conditions to persist and required invasive repair activity, including wall and ceiling repairs arising from leaks. This work necessarily involved intrusion into Plaintiff's living space and contact with personal belongings.

70. Defendants' interference impaired the condition, quality, and value of Plaintiff's property, including through water damage, contamination, dust, and unsafe handling.

71. Such interference caused actual harm, including diminution in value, repair costs, and loss of use.

72. Defendants acted intentionally and without Plaintiffs' consent, and their conduct was a substantial factor in causing Plaintiffs' damages.

**TENTH CAUSE OF ACTION**

**Negligent / Intentional Destruction of Personal Property**

73. Plaintiffs reallege and incorporate all prior allegations.

74. Defendants owed Plaintiff a duty to exercise reasonable care in maintaining the premises and in conducting repairs so as not to damage Plaintiff's personal property.

75. Defendants breached that duty by:

(a) failing to timely repair known hazardous conditions;

(b) allowing water intrusion, leaks, and structural damage to persist;

(c) performing or permitting repairs in a careless and unsafe manner; and

(d) failing to safeguard Plaintiff's belongings during repair operations.

76. City records confirm ongoing violations involving building disrepair, leak-related damage, and required structural remediation. These conditions created a foreseeable risk of damage to tenant property.

77. As a direct and proximate result, Plaintiff's personal property was destroyed, damaged, or rendered unusable.

78. Alternatively, Defendants' conduct was intentional in that they knowingly proceeded with intrusive repair work and/or failed to act despite known risks, with conscious disregard for the impact on Plaintiff's property.

79. Plaintiff suffered damages including replacement value, repair costs, loss of use, and incidental and consequential damages.

**ELEVENTH CAUSE OF ACTION**

**Trespass to Real Property**

80. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

81. At all relevant times, Plaintiffs were in lawful possession of the subject premises pursuant to a written lease agreement, which governed Defendants' right of entry and required, among other things, advance notice and entry only for lawful purposes.

82. Defendants, and each of them, intentionally, recklessly, and/or negligently entered the subject premises without Plaintiffs' consent and in violation of the lease and applicable law, including but not limited to entering without proper notice, entering at unreasonable times, and entering for purposes beyond the scope permitted under the lease.

83. On information and belief, Defendants and their agents repeatedly accessed the unit in connection with purported inspections, repairs, and construction activities, including those relating to water intrusion, wall and ceiling damage, and other hazardous conditions.

84. City records confirm that Defendants undertook repair work involving intrusion into the unit, including wall and ceiling remediation arising from leak-related damage. Such work necessarily required physical entry into Plaintiffs' dwelling unit.

85. Despite this, Defendants failed to comply with contractual and statutory requirements governing entry, including providing proper notice and limiting entry to reasonable and lawful purposes.

86. Each unauthorized entry constituted an independent trespass and a direct interference with Plaintiffs' exclusive possessory interest in the premises.

87. As a direct and proximate result of Defendants' trespasses, Plaintiffs suffered damages including loss of quiet enjoyment, invasion of privacy, interference with use and occupancy, emotional distress, and consequential economic damages.

88. Defendants' conduct was willful, oppressive, and carried out with conscious disregard of Plaintiff's rights, entitling Plaintiffs to punitive damages.

## TWELFTH CAUSE OF ACTION

### Breach of Contract

89. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

90. Plaintiffs and Defendants entered into a written lease agreement governing the tenancy at the subject premises. The lease constitutes a valid and enforceable contract.

91. Under the lease, Defendants were obligated, among other things, to:

(a) maintain the premises in a safe, sanitary, and habitable condition;

(b) comply with all applicable laws, including building, health, and safety codes;

(c) make timely and adequate repairs; and

(d) limit entry into the premises to circumstances permitted by the lease and applicable law.

92. Plaintiffs performed all conditions, covenants, and promises required under the lease, except as excused by Defendants' conduct.

93. Defendants materially breached the lease by, among other things:

(a) failing to maintain the premises in a habitable condition;

(b) failing to timely repair known hazardous conditions, including water intrusion and structural damage;

(c) performing or permitting defective and unsafe repair work; and

(d) entering the premises without complying with contractual notice and entry provisions.

94. City enforcement records confirm that Defendants' property was in violation of multiple safety and maintenance requirements, including damaged walls and ceilings from leaks and failure to maintain required safety devices.

95. These violations constitute breaches of Defendants' contractual obligations to maintain the premises and comply with applicable law.

96. As a direct and proximate result of Defendants' breaches, Plaintiff suffered damages including rent paid for uninhabitable conditions, loss of use and enjoyment, relocation costs, property damage, and other consequential damages.

97. Defendants' breaches were substantial and go to the root of the lease agreement.

**THIRTEENTH CAUSE OF ACTION**

**Breach of the Covenant of Good Faith and Fair Dealing**

98. Plaintiffs reallege and incorporate all prior allegations.

99. The lease contained an implied covenant of good faith and fair dealing, which required Defendants to act in good faith and not do anything to deprive Plaintiff of the benefits of the agreement.

100. Defendants breached this covenant by engaging in conduct that unfairly interfered with Plaintiff's rights under the lease, including:

(a) failing to perform necessary repairs despite knowledge of hazardous conditions;

(b) allowing unsafe conditions to persist in violation of applicable law;

(c) conducting intrusive and excessive entry into the premises under the guise of repairs; and

(d) failing to protect Plaintiff's possessory and property rights during repair activities.

101. Defendants' conduct was not merely negligent but constituted a conscious and deliberate failure to fulfill contractual obligations in a manner consistent with the purposes of the lease.

102. The pattern of violations, repair failures, and intrusive conduct—documented through City enforcement actions—demonstrates that Defendants deprived Plaintiff of the fundamental benefits of the tenancy, including safe occupancy, quiet enjoyment, and use of the premises.

103. As a direct and proximate result, Plaintiff suffered damages including economic losses, loss of use and enjoyment, and consequential damages.

104. Defendants' conduct was willful, oppressive, and in bad faith, entitling Plaintiff to all available remedies.

## VI. DAMAGES

62. Plaintiff seeks:

- Compensatory damages
- Statutory penalties
- Restitution
- Emotional distress damages
- Punitive damages
- Attorneys' fees

## VII. PRAYER FOR RELIEF

Plaintiffs request:

1. Judgment for all damages according to proof
2. Statutory penalties
3. Restitution
4. Attorney's fees and costs
5. Any further relief deemed just and proper

## VIII. JURY DEMAND

Plaintiff demands trial by jury.

Dated: March 30, 2026

NEVADA'S LAWYERS

/s/Allison Schmidt
7250 S. Durango Dr. #130-A295
Las Vegas, NV 89113
702.900.9040
Email: allison@nevadaslawyers.com
*Attorney for Ron Ruangtragool*
*and Aaron Guhin*